STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-39
$\supset HM - KEN - S/, e^{\cdot}$

DONALD J. WILLIAMS,

Petitioner

v.

STATE TAX ASSESSOR,

Respondent

**DECISION ON APPEAL**

DONALD L. GARBRECHT
LAW LIBRARY

SEP 3 2002

This matter is before the court on petitioner's petition for review of final agency action in accordance with M.R. Civ. P. 80C. Petitioner asserts three areas of complaint in the State Tax Assessor's treatment of his 1986 calendar year and 1987 calendar year income tax assessments. Petitioner first complains that the assessments are erroneous inasmuch as he did not receive Maine-source income during the two years in question as defined in 36 M.R.S.A. § 5102(1-C). Secondly, petitioner complains that the respondent had disallowed a credit for taxes paid by the petitioner through the State of New Jersey contrary to 36 M.R.S.A. § 5224-A. Finally, the petitioner alleges that the respondent is incorrect as a matter of law in that he did not allow the petitioner to reflect net operating losses incurred in 1989 that the petitioner asserts is entitled to carry back for a deduction

1

for the 1987 and 1987 tax years.

In accordance with 36 M.R.S.A. § 151, the Tax Assessor's decision on reconsideration is subject to review by this court which must conduct a de novo hearing and make a de novo determination of the merits of the case. The court shall make its own determination as to all questions of fact and law and the burden of proof is on the taxpayer.

The petitioner describes the circumstances of the taxable years 1986 and 1987 in terms of the operation of seven corporations, each corporation owned by D.J. Williams, Inc., a New Jersey holding company of which the petitioner was sole owner. Most of corporate operations were in New Jersey. One exception was a corporation known as Doran-Maine, Inc., a concrete pipe business in Leeds, Maine, formed in 1978. For purposes of ease of administration, including Social Security and tax withholding, the petitioner drew his entire salary from Doran-Maine, Inc. receiving IRS W2 forms therefor. During this time, he described the operation of various corporations as under a "managership" type of supervision. He admits that he retained the ultimate decision-making with respect to major policy issues but denies day-to-involvement. In 1982, the petitioner purchased two camps in Readfield, Maine, which he transferred to Doran-Maine, Inc. The camps were sold finally in 1984. After the camps were sold, and as a result of child

2

custody proceedings, the petitioner rented a small apartment at 9 Aron Drive in Auburn for himself and his son. His daughter also stayed there when in Maine. In December of 1986, petitioner had his Maine corporation purchase a house in Monmouth.

In 1985, the petitioner's eldest daughter graduated from college and came to Maine to work at Doran-Maine, Inc. Very soon after joining the company, the daughter became vice-president and was running the company day-to-day operations, i.e., a manager. The petitioner admits that he physically attended the Leeds plant of Doran-Maine, Inc. two days a week but asserts that he was in New Jersey operating out of D.J. Williams an average of three days per week.

During this time, the petitioner's only residential property ownership interest in the State of New Jersey was title as a co-owner of the marital home awarded to his ex-wife in the divorce proceedings. When in New Jersey, petitioner stayed at the home of his parents.

The first fundamental issue before the court is a determination whether petitioner became a resident of Maine, as contemplated by the income tax statutes, and if so, when. If the petitioner is a resident individual, Maine law provides that his Maine adjusted gross income is his federal adjusted gross income for the taxable period. If the petitioner is a

nonresident, his Maine adjusted gross income is that part of his federal adjusted gross income derived from sources within the State, i.e., his Maine-source income. 36 M.R.S.A. § 5102(1-C).

The law goes on to describe a "resident individual" as meaning a person either who is domiciled in Maine, or if not domiciled in Maine, he maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State. 36 M.R.S.A. § 5102(5). If an individual changes his status as a resident or nonresident individual during the taxable year, the individual is required to file a nonresident tax return and his tax would be computed as if that individual were a nonresident individual. 36 M.R.S.A. § 5224-A.

As a matter of record, Mr. Williams admits that he was a resident of the State of Maine, at least for the period starting May 1, 1987. Therefore, was he a nonresident individual in 1986 and a nonresident individual in 1987 as a matter of definition? The circumstantial evidence is overwhelming that while the petitioner operated as chief executive officer of his various corporations through his New Jersey corporate holding company, he did the majority of his work situate in the State of Maine commencing in the early part of 1985. He negotiated from the State of Maine with the New Jersey Environmental Protection Office through correspondence in the early part of

4

1985 from a Maine address. He commenced using Maine accounting firms to prepare tax returns and other financial documents starting in 1985. In 1994, he testified under oath in a Maine proceeding, that he moved to Maine in 1984. At that time, he made it clear that he had no desire to return to New Jersey. He testified in another Maine proceeding in 1995 that he had been a resident of Monmouth, Maine, since approximately 1986. He negotiated child support arrearages with a Maine attorney in June and July of 1986. He obtained a 1986 Maine driver's license on October 27, 1986, utilizing an address of 9 Aron Drive in Auburn, Maine. While there does not seem to be much dispute that he spent a considerable period of time in New Jersey undertaking business activities, he had no residence in New Jersey other than temporary stays at his parents' home, and he had temporary stays in Florida. From the time he sold his Readfield camps and acquired rental of an Auburn apartment through his acquisition of his Monmouth residence all circumstances mitigate to the petitioner being a resident of the State of Maine.

Title 36 M.R.S.A. § 5142(8) provides that minimum taxability thresholds for nonresidents are:

> compensation for personal services performed in Maine is Maine-source income, . . ., if the nonresident taxpayer is present in Maine performing personal services for more than 20 days during

the taxable year and directly earns or derives more than $6,000 in gross income during the taxable year in Maine from all sources.

The period from May 1 to December 31, 1987, is not in issue as it has been stipulated by the petitioner. Prior to that time, the petitioner, as president of Doran-Maine, Inc., provided supervision to his managers, negotiated real estate transactions, purchased, rented and fabricated equipment. In spite of the petitioner's assertion that he was working only for D.J. Williams, Inc. but was paid through Doran-Maine, Inc., he has provided no documentation or other information to establish that his salary was ever debited from the books of D.J. Williams, Inc. Further, it is clear that in his acquisition of income from Doran-Maine, Inc., notwithstanding its involvement with all of his corporations, from the time his son moved to Maine in 1984 and his daughter in 1985, the petitioner spent more time in Maine than any other jurisdiction. While petitioner argues that it is not fair that he should be liable for Maine taxes wherein his major operations are in New Jersey, he clearly had the means to acquire and follow professional advice for purposes of clarifying any income tax issues between the States of Maine and New Jersey. Further, he was assisted in these matters by Maine accounting firms.

The State Tax Assessor in his reconsideration concluded that the compensation received by the petitioner was Maine-sourced income received

by a nonresident prior to May 1, 1987, and properly included in the Maine adjusted gross income for the years under review. While the court believes there is strong evidence to suggest that the petitioner was a resident during this period of time and therefore all of his federal adjusted gross income would be subject to Maine tax, the court finds no error in the State Tax Assessor's conclusions as to residency. All this evidence leads the court to conclude that petitioner's base of supervision of his corporations was in Maine. Since he derived his income from a Maine corporation, located in Maine, he had Maine-source income as alleged.

The petitioner next claims that he should have been given credit for his New Jersey taxes paid during the taxable period in question and he relies on the language that says:

> The part year resident shall also be entitled to the credit provided by section 5217-A, computed as if the individual's Maine adjusted gross income for the entire year was comprised only of that portion which is contributed to the portion of the year during which that individual was that individual was a resident.

36 M.R.S.A. § 5224-A. The credit he claims arises under 36 M.R.S.A. § 5217-A that:

> A resident or individual is allowed a credit against the tax otherwise due under this Part, excluding the tax imposed by section 5203-A, for the amount of income tax imposed on that individual for the taxable year by another state of the United States. . .

7

It is clear that with regard to the period of 1986 and the first four months of 1987 prior to the petitioner admitting to residency in the State of Maine, the credit for New Jersey taxes is not available because the petitioner claims he was not a resident and the credit is only available to a resident filing his federal adjusted gross income as his entire income for the taxable period. As a nonresident, he was only liable for the Maine-source income. As of May 1, 1987, his income was all derived from Maine sources and therefore he had no income derived from New Jersey sources subject to Maine tax.

Finally, the petitioner objects to the disallowance of the net operating loss deduction in 1986 and 1987 for losses incurred in 1989 arising out of the operation of his farm in Monmouth. This entitlement is subject to a statute of limitations as a matter of law. The claim for a refund is governed by 36 M.R.S.A. § 5278(5)(B):

> If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or credit carry-back, the claim may be made, under regulations prescribed by the assessor, within the period which ends with the expiration of the 15 day of the 40th month following the end of the taxable year of the net operating loss or the unused credit which resulted in such carry-back. . . .

The petitioner first asserted the claim by including the deduction in his 1987 returns filed in May of 1996. The petitioner has never filed a Maine

8

income tax return for the tax year 1986. Since it is unequivocal that the claims for the credit are time barred by the statute, the petitioner must fail in that request for relief.

The petitioner has the burden of proving the decision of the State Tax Assessor to be in error, either factually, legally, or both. He has failed to meet that burden.

The entry will be:

The decision of the State Tax Assessor dated April 30, 2001, entitled "Request for Reconsideration of Two Assessments of Income Tax, Interest and Penalties for Tax Years Ending 1986 and 1987 No. 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, MATS Case Nos. 236606 S and 259152 S Compliance /TCU" is AFFIRMED.

Dated:  August 16 , 2002

Donald H. Marden
Justice, Superior Court

9

Date Filed __5/29/01__ __Kennebec__ Docket No. __AP01-39__
County

Action __Petition for Review__
80C

# J. MARDEN

Donald J. Williams vs. State Tax Assessor

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Donald Williams, Pro Se<br>492 Ridge Road<br>Monmouth, Maine 04259 | Thomas A. Knowlton, AAG<br>6 State House Station<br>Augusta, Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 5/29/01 | Petition for Review of Final Agency Action, filed. s/Williams Pro Se |
| 7/20/01 | Letter entering appearance, filed. s/Knowlton, AAG |
| 8/1/01 | State Tax Assessor's Consented-To Motion for An Order to Specify the Future Course of Proceedings, filed. s/Knowlton, AAG.<br>Proposed Order, filed. |
| 8/6/01 | ORDER SPECIFYING FUTURE COURSE OF PROCEEDINGS, Atwood, J.<br>(Discovery to be completed no later than March 30, 2002.)<br>Copies mailed to atty of record and Pltf. |
| 1/22/02 | Notification of Discovery Service, filed. s/Knowlton, AAG<br>State Tax Assessor's First Request for Production of Documents by Petitione<br>and State Tax Assessor's First Set of Interrogatories Directed to Petitione<br>served on Donald J. Williams on 1/18/02. |
| 3/13/02 | Notification of Discovery Service, filed. s/Knowlton, AAG<br>Notice of Deposition of Donald J. Williams served on Donald J. Williams<br>on 3/11/02. |
| 6/6/02 | State Tax Assessor's Motion in Limine to Enforce Settlement Agreement,<br>filed. s/Knowlton, AAG<br>Affidavit of William R. Stokes in Support of Assessor's Motion in Limine<br>to Enforce Settlement Agreement, filed. s/Stokes, AAG<br>Proposed Order on Assessor's Motion in Limine to Enforce Settlement<br>Agreement, filed. |
| 6/19/02 | Letter from Thomas Knowlton, AAG Withdrawing Motion in Limine to<br>Enforce Settlement Agreement (with attached copy of Stipulation Concerning<br>Domicile), filed. s/T. Knowlton, AAG |
| 7/11/02 | Non-jury De Novo hearing had with Hon. Justice Donald Marden, presiding.<br>Donald Williams, Pro Se plaintiff and Thomas Knowlton, AAG for the State.<br>Laurie Gould, CR<br>Opening statments made to the court.<br>Plaintiff testifies on behalf. Deft. exhibits (see attached list)<br>State of Maine moves for judgement as to Count 1. Court defers ruling.<br>Closing statements made to the court.<br>Court to take matter under advisement. |